# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Lehman Brothers Holdings, Inc., <br><br> Plaintiff, <br> vs. <br> Home Capital Funding, <br><br> Defendant. | CASE NO. 09cv859 WQH (BLM) <br><br> **ORDER** |

HAYES, Judge:

The matter before the Court is Plaintiff's Amended Motion for Default Judgment. (Doc. # 11).

## BACKGROUND

On April 24, 2009, Plaintiff initiated this action by filing the complaint. (Doc. # 1). On May 26, 2009, Plaintiff filed an executed summons. (Doc. # 4). The Declaration of the Process Server indicates Defendant's registered agent was served at 2374 E. Camelback Rd. in Pheonix, AZ, 85016. *Id.* On July 23, 2009, at the request of Plaintiff, the Clerk of the Court entered a default. (Doc. # 7). On August 12, 2009 Plaintiff filed a Motion for Default Judgment seeking $3,364,357.78 in damages. (Doc. # 9). On December 17, 2009, the Court denied the Motion for Default Judgment because Plaintiff failed to establish the amount of damages owed. (Doc. # 10).

Plaintiff submitted a spreadsheet which was "based on business records used during the ordinary course of business which are also attached to the motion," but the spreadsheet contained errors and the data in the spreadsheet did not match the allegations of the complaint.

*Id.* Four mortgages which were not listed in the complaint were included in the damages calculation. *Id.* The Court held that "[i]n addition to the discrepancies between the mortgages listed in the complaint and on the spreadsheet, Plaintiff has also failed to fully explain the calculations used to arrive at an amount of damages for each mortgage." *Id.* at 3-4

The order further stated "[i]n order to establish its damages, Plaintiff must submit a clear statement of the damages that resulted from each loan in Exhibit A of the complaint with evidence to support the damages claimed." *Id.* at 4. Plaintiff was given thirty days to file an amended motion for default judgment. *Id.*

On January 19, 2009, Plaintiff filed its Amended Motion for Default Judgment. (Doc. # 11). Plaintiff now seeks $2,655,075.89 in damages on ten of the eleven loans listed in the complaint. (Doc. # 11-1 at 4).

## ALLEGATIONS OF THE COMPLAINT

Plaintiff purchased eleven mortgage loans from Defendant. (Compl. ¶ 1). Defendant made several misrepresentations about some of the loans, the properties, and the borrowers. *Id.* at ¶¶ 12-15. These misrepresentations constitute a breach of the purchase contract which entitles Plaintiff to require Defendant to repurchase the mortgages. *Id.* at ¶ 18. Some of the loans that Plaintiff purchased immediately went into default. *Id.* at ¶¶ 20-23. Such "Early Payment Defaults" by the borrowers entitles Plaintiff to require Defendant to repurchase these mortgages. *Id.* Plaintiff demanded that Defendant comply with its contractual obligation to repurchase these eleven mortgages, but Defendant refused to do so. *Id.* at ¶ 26. Exhibit A, attached to the complaint, identifies the eleven complaints by their loan numbers. Defendant failed to repurchase loans 1-5, with loan numbers ending in 7323, 8280, 9100, 1196, and 1311, after Plaintiff demanded repurchase due to Defendants misrepresentations. (Doc. # 1, Ex. A). Defendants failed to repurchase loans 6-11, with loan numbers ending in 6454, 3075, 3628, 4979, 0157, and 8822, after Plaintiff demanded repurchase due to the borrowers' Early Payment Default. *Id.* The complaint states a breach of contract claim and a breach of express warranty claim. *Id.* at ¶¶ 27-47.

## ANALYSIS

Rule 55(a) of the Federal Rules of Civil Procedure requires that the Clerk of the Court enter default "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that the court may grant a default judgment after default has been entered by the Clerk of the Court. Fed. R. Civ. P. 55(b)(2). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (quotation omitted).

"Plaintiff is required to prove all damages sought in the complaint. In addition, '[a] judgment by default shall not be different in kind [or] exceed in amount that prayed for in the [complaint].' In determining damages, a court can rely on the declarations submitted by the plaintiff or order a full evidentiary hearing. . . . If proximate cause is properly alleged in the complaint, it is admitted upon default. Injury is established and plaintiff need prove only that the compensation sought relates to the damages that naturally flow from the injuries pled." *Phillip Morris USA, Inc. v. Castworld Prods.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (citations omitted).

Plaintiff has demonstrated that Defendants have been duly served and have not filed a responsive pleading. The Clerk of the Court has entered Defendants' default. (Doc. # 7). The Complaint's factual allegations are sufficient to sustain the causes of action alleged in the Complaint. However, Plaintiff has failed to establish the amount of damages by a preponderance of the evidence.

Plaintiff filed a spreadsheet (Exhibit G, Doc. # 11-9) which purports to establish its damages along with a declaration from one of Plaintiff's employees, Zachary Trumpp, who created the spreadsheet (Amended Trumpp Decl., Doc. # 11-2). Trumpp explains that he calculated the amounts in the spreadsheet based on business records used during the ordinary course of business which are attached to the declaration and labeled Plaintiff's Exhibits A-F. (Amended Trumpp Decl., Doc. # 11-2 at ¶ 4). Upon inspection, the Court finds that these materials do not support the damages that Plaintiff is claiming.

In calculating the damages, Trumpp states that he determined the purchase price for each loan from Exhibit C, which is "the purchase advices for each loan." *Id.* at ¶ 6. Then he

> calculated the borrower's principal payments by subtracting the unpaid principal balance on the loan as of either the present date or the date of liquidation (Column 8) [of Exhibit G], found in the business records showing the relevant data for each loan (attached hereto as Exhibit D) from the outstanding principal balance as of the date of [Plaintiff's] purchase of the loan (Column 6) [of Exhibit G].

*Id.* at ¶ 8. Trumpp offers no explanation of how Exhibits C and D would be used in the normal course of business nor does he identify the location of the data used to create the spreadsheets. *See id.* While Exhibit C lists the outstanding principal balance as of the date Plaintiff purchased the loans from Defendant, Exhibit D does not list the outstanding principal balance at present or at the date of liquidation. *See* Exhibit D, Doc. # 11-6. For example, loan number 7323 had an outstanding balance of $264,000.00 when Plaintiff purchased it, *see* Exhibit C, Doc. # 11-5 at 2, but according to the spreadsheet, Plaintiff made a $733.90 payment towards the principal of the loan, *see* Exhibit G, Doc. # 11-9, Column 9, resulting in a outstanding principal balance of $263,266.10 at the present date, *see id.*, Column 8. According to Trumpp, the $733.90 payment and the $263,266.10 balance should be reflected in Exhibit D. *See* Amended Trump Decl. at ¶ 8. However, the corresponding record in Exhibit D for loan number 7323 states the principal balance is ".00" as of July 22, 2009, and makes no reference to either figure. *See* Doc. # 11-6 at 2. In fact, all of the documents contained in Exhibit D list the principal balance as ".00" and none reflect any principal payments. *See id.* at 2-10. Furthermore, one loan listed in the spreadsheet, number 6454, does not have a corresponding record of the loan in Exhibit D. *See id.*

Next, Trumpp states that he

> determined the proceeds from [] sale of the loan or the collateral securing it (Column 10) [of Exhibit G] from two different sources depending on the type of loan. For the loans listed with a liquidation type of 'R' on Exhibit G (nos. ****8280, ****4979, and ****1196), I obtained from the business records attached as Exhibit D the sale price of the REO sale of the property securing the loan.

Amended Trumpp Doc. # 11-2 at ¶ 8. The spreadsheet lists loan number 8280 as having $424,272.30 in proceeds from liquidation, loan number 4979 as having $339,007.43 in

1  proceeds from liquidation, and loan number 1196 as having proceeds of $128,437.79 in
2  proceeds from liquidation. (Exhibit G, Doc. # 11-9 at Column 10). However, Exhibit D does
3  not list the REO sale price of loan numbers 8280, 4979, or 1196. *See* Exhibit D, Doc. # 11-6
4  at 3-4, 7. The Court is not able to identify any document contained in the record which
5  supports the REO sale price data Trumpp entered into the spreadsheet in Column 10 for loan
6  numbers 8280, 4979, or 1196. Trumpp continues:

> In addition, the loans listed with liquidation type 'SD' on Exhibit G were sold at discounted prices given the defects with the loans—the same defects giving rise to this suit. I obtained the purchase price and unpaid principal balance at liquidation for these loans (nos. ****0157, ****3075, ****6454, ****9100, ****3628) from the [Plaintiff's] business records attached hereto as Exhibit E.

10 (Amended Trumpp Decl., Doc. # 11-2 at ¶ 8). Exhibit E does indeed list the purchase price
11 and unpaid principal balance on the loans. (Exhibit E, Doc. # 11-7 at 1). However, Exhibit
12 E consists of a second spreadsheet with nearly all of the cells blacked out except for the unpaid
13 principal balance, the loss amount, and the sale balance. *Id.* Trumpp does not offer any
14 explanation of the function the document serves in the normal course of business. *See*
15 Amended Trumpp Doc. # 11-2 at ¶ 8**.**

16    Trumpp then states that Column 12 of the spreadsheet lists "the date through which the
17 borrower paid interest. This is found on the business records attached in Exhibit D."
18 (Amended Trumpp Decl., Doc. # 11-2 at ¶ 9). The date through which the borrower paid
19 interest is necessary to calculate the unpaid interest accrued before Plaintiff sold many of the
20 loans. *See* Exhibit G, Doc. # 11-9 at Columns 12-18, Amended Trumpp Decl., Doc. # 11-2
21 at ¶ 11. No explanation is given of where on the forms attached as Exhibit D this date appears.
22 *See id.* However, the dates listed in Column 12 of the spreadsheet for each loan do not appear
23 on the corresponding forms in Exhibit D. *Compare* Exhibit G, Doc. # 11-9 at Column 12 *with*
24 Exhibit D, Doc. # 11-6 at 2-10. It appears that a date on the left upper portion of the document
25 lists the first missed interest payment, one month after the date listed in the spreadsheet at
26 Column 12. For example, for loan number 1196, the spreadsheet lists the date through which
27 the buyer paid interest as "5/1/2007." *See* Exhibit G, Doc. # 11-9 at Column 12. The
28 corresponding record for loan number 1196 in Exhibit D includes the date "06/01/07" next to

the initials PMT, which presumably was the due date of the next interest payment. *See* Exhibit D, Doc. # 11-6 at 7. However, several other dates appear on the form next to other codes. *See* Exhibit D, Doc. # 11-6. On some forms in Exhibit D, there is a different date listed under the heading "last paid." For example, for loan number 3075, in the center of the form in Exhibit D, four dates are listed under "last paid," all of them after the "date through which borrower paid interest" given in Column 12 of Exhibit G. *Id.* at 9. The Court finds that the information in Exhibit D does not appear consistent with the data in the spreadsheet.

Trumpp explains that Column 13 of the spreadsheet shows the date of Defendant's default which is 30 days after a demand letter was sent to Defendant pursuant to the terms of the contract. (Amended Trumpp Decl., Doc. # 11-2 at ¶ 10). The date of default is necessary to calculate the "interest payable on OPB [outstanding principal balance]," which factored into damages. *See id.* at ¶ 11. The demand letters are included as Exhibit F. (Doc. # 11-8). Although there are ten loans at issue, there are thirteen demand letters in Exhibit F. *Id.* Eight of the thirteen demand letters are for nine of the ten loans for which Plaintiff seeks damages.[1] *See id.* at 4-7, 10-13, 16-17, 20-24. Five letters are for loans that are not involved in this case. *See id.* at 2-3, 8-9, 14-15, 18-19, 24-25. There is no demand letter included for loan number 0157, one of the ten loans for which Plaintiff seeks damages in this case, and therefore no way to verify the date of Defendant's default on their repurchase obligation as to that loan. *See id.;* Exhibit G, Doc. # 11-9.

Because the data in Column 12 are unsupported by the evidence Plaintiff offers, it is not possible to determine whether interest calculated on the outstanding principal balance is correct. *See* Amended Trumpp Decl., Doc. # 11-2 at ¶ 11. The calculation Trumpp performed on the spreadsheet requires calculating the time between the date the borrower stopped paying interest as listed in Column 12 and the earlier of the date of Defendant's breach, listed in Column 13, or the "date through which interest was payable," which is the liquidation date listed in Column 14. *Id.* In addition to lacking evidence of the correct start date for calculating

---

[1] One letter covers two of the ten loans, 1196 and 1311, because both loans were made to the same borrower. *See id.* at 26-27.

the interest, Plaintiff has not offered any evidence in support of the dates listed in Column 14. Trumpp does not cite to any source in the records for this date. *See* Amended Trumpp Decl., Doc. # 11-2 at ¶ 11. Without a verifiable date for liquidation, it is also not possible to calculate prejudgment interest, which Plaintiff seeks. *See* Amended Trumpp Decl., Doc. # 11-2 at ¶ 14-16; Exhibit G, Doc. # 11-9 at Columns 26 and 28.

Plaintiff's damages calculation also includes "'any and all expenses, including, without limitation costs of foreclosure and reasonable attorney's fees, incurred by Purchaser in the exercise by Purchaser of its rights and remedies in connect[ion] with the Mortgage Loan, the Mortgaged Property, and/or the Mortgagor' as defined in the Seller's Guide." *See* Amended Trumpp Decl., Doc. # 11-2 at ¶ 12. According to Trumpp, "[t]hese expenses, were there any, can also be found in the business records attached in Exhibit D." *Id.* Four mortgages have such expenses according to the spreadsheet. *See* Exhibit G, Column 19. Mortgage number 8280 has $7,813 in expenses, mortgage number 4749 has $25,134.98 in expenses, mortgage number 7323 has $12,095.01 in expenses, and mortgage number 1196 has $5,063 in expenses. *Id.* None of these figures appears anywhere on the corresponding record for the mortgage in Exhibit D. *See* Exhibit D, Doc. # 11-6 at 2-4, 7.

## CONCLUSION

After examining the documents provided, the Court concludes that the record fails to establish damages by a preponderance of the evidence. Plaintiff shall file any additional affidavits and documents and submit additional briefing within fourteen days of the date of this order. Plaintiff shall appear for a hearing on the Amended Motion for Default Judgment on June 10, 2010, in Courtroom 4 at 9:30 A.M. Plaintiff's Amended Motion for Default Judgment (Doc. # 11) shall remain pending.

DATED: May 12, 2010

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge